UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZOND, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY, and<br>THE PROCTER & GAMBLE<br>COMPANY,<br><br>       Defendants. | CIVIL ACTION NO. 1:13-cv-11567-DJC |

## ZOND, LLC'S OPPOSITION TO THE GILLETTE COMPANY AND THE PROCTER & GAMBLE COMPANY'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND .....................................................................................................2

III.    ARGUMENT...........................................................................................................4

     A.      A Stay Would Unduly Prejudice and Present a Clear Tactical
           Disadvantage to Zond .................................................................................4

           1.     Gillette and Intel Waited Too Long to File its Petitions for IPR ................5

           2.     Gillette's Motion to Stay Is Both Premature and Tardy .............................5

           3.     The PTO Has Not Instituted a Single IPR ..................................................9

           4.     Zond Will Suffer Prejudice if the Case Is Stayed.....................................10

     B.      There Is No Evidence that a Stay of this Case Would Simplify Issues for
           Trial and Certainly Not for this Court.....................................................12

     C.      The Litigation Is No Longer in Its Early Stages and Should Not Be Stayed.........16

IV.     CONCLUSION......................................................................................................17

## I.   __INTRODUCTION__

Ten months into this case, Gillette filed a premature motion to stay these proceedings pending the resolution of multiple petitions in the United States Patent & Trademark Office ("PTO").  Gillette's Motion (D.I. 67) is aimed at gaining a tactical advantage in this case and deferring the judgment of infringement alleged against it for years.  Through its Motion, Gillette seeks to prejudice Zond's recognized interest in the timely enforcement of its patent rights. Gillette's Motion is not based on any findings of the PTO, but merely on speculation that the PTO would institute proceedings that would address validity of all the asserted claims in this case.

Gillette's motion is tardy with regard to its awareness of the implicated alleged prior art, but also premature with regard to the filing of petitions for *inter partes* review ("IPR") on all ten asserted patents.  Though Gillette began filing its IPR petitions months ago and has clearly known about Intel's IPRs for months—indeed, Gillette and Intel are represented by the same law firm—Gillette delayed filing the instant Motion until just before the start of the claim construction process.   Moreover, Gillette and Intel's petitions rely mostly on prior art that was cited to the PTO during the original prosecution of the patents-in-suit or art that is closely related to it, such that the petitions for IPR and the instant motion could have been filed long ago.  At the same time, Gillette's Motion is premature because the PTO has taken no action on Gillette and Intel's IPR petitions and will not do so for many months.  Further, neither Intel nor Gillette has filed petitions for IPR that cover all asserted claims. Under the law in this and other districts, these are precisely the circumstances that mutually align against a stay.  Thus, Gillette's Motion should be denied.

## II.   **BACKGROUND**

Zond, LLC (f/k/a Zond, Inc.) ("Zond") filed this patent litigation on July 1, 2013,

accusing Gillette of infringing ten patents-in-suit[1] related to magnetron sputtering technology.

*See* D.I. 1.  Gillette has admitted that it uses magnetron sputtering in its research and

development of razor blades, which Zond contends infringes claims of its asserted patents.  *See,*

*e.g.,* D.I. 53-2.

Zond served its initial disclosures on October 21, 2013 and Gillette served its initial

disclosures on November 4, 2013.  The parties have each served ten interrogatories on the other

and each party has responded.  On December 11, 2013, Gillette served 116 requests for

production of documents on Zond and on February 4, 2013, Zond served 124 requests for

production of documents on Gillette.  To date Zond has produced 78,509 pages, and Gillette has

produced about 1800 pages.  Zond served its infringement contentions on January 13, 2014, and

Intel served its invalidity contentions on March 18-19, 2014.  A deposition of a Gillette witness

took place on April 2, 2014.  On May 9, 2014 the parties exchanged proposed claim terms for

construction, and have set up a meet and confer retarding that exchange on May 19, 2014.  Claim

construction briefing is scheduled to begin on June 18, 2014.

On March 4, 2014 through April 4, 2014—beginning more than seven months after this

action was filed—Gillette filed six petitions for IPR covering all of the claims (whether asserted

or not) of three of the ten patents-in-suit: the '775 Patent, the '773 Patent, and the '155 Patent

("Gillette Petitions").  Gillette is not planning on filing petitions on the other seven patents

---

[1] Zond has asserted U.S. Patent Nos. 6,853,142 (the "'142 patent"), 6,806,652 (the "'652 patent"), 7,604,716 (the "'716 patent"), 7,147,759 (the "'759 patent"), 7,811,421 (the "'421 patent"), 6,805,779 (the "'779 patent"), 7,808,184 (the "'184 patent"), 6,896,775 (the "'775 Patent"), 6,896,773 (the "'773 Patent"), and 8,125,155 (the "'155 Patent") (together, the "patents-in-suit" or "asserted patents").

because another party in another action, Intel, filed 21 petitions for IPR with respect to six of the seven remaining patents.  Intel's petitions cover all claims (whether asserted or not) of five of the remaining seven patents-in-suit (the '142, '184, '421, '716 patent and '759 patents), and cover only some asserted claims (but not others) of the sixth patent (the '779 patent) ("Intel Petitions"). Intel has yet to file any petitions for IPR with respect to the remaining patent, the '652 patent, despite its assurances since March 2014 that it would do so.  As of the filing of this brief, no petition for IPR regarding the '652 patent has been filed with the PTO by any party.

The Intel Petitions and Gillette Petitions overwhelmingly rely on obviousness arguments generated by combining two or more prior art references, as opposed to anticipation arguments (only 6 of 119 proposed grounds of alleged unpatentability rely on anticipation).  That is, in the main, Intel and Gillette do not argue before the PTO that Zond did not first invent the patented subject matter.  Their argument is merely that multiple references combined would have allegedly rendered all of Zond's inventions obvious.

The PTO has taken no substantive action on any of the Petitions.  Importantly, the PTO has not given any indication that it intends to grant the Petitions with respect to even a single claim.  ***Thus, at present, not a single asserted claim in this case is subject to IPR***.

The PTO may not decide whether it will dismiss or institute the Petitions for up to six months following the PTO granting a notice of filing date.  *See* 35 U.S.C. § 314(b).  Thus, for just the Intel Petitions and the Gillette Petitions filed thus far, the parties may not know whether the PTO will institute IPRs on the grounds requested until November 2014.  This does not even account for the IPRs that have yet to be filed (assuming they ever will be filed).

Additionally, another party, TSMC, has indicated to Judge Young that it intends to file IPRs of its own, and subsequently seek joinder with Intel's IPRs, a strategy that TSMC claims

will be unopposed by Intel.  *See Zond, LLC. v. Fujitsu Ltd. et al.*, Case No. 13-cv-11634, D.I. 84

at 2 (D. Mass. Apr. 29, 2014).  If those petitions are filed and joinder is granted, the November

2014 date could potentially be pushed out even further on 7 of the 10 patents at issue in this

action.

## III.   ARGUMENT

"The party requesting a stay bears the burden of showing that the circumstances justify an

exercise of that discretion."  *Nken v. Holder*, 129 S. Ct. 1749, 1761 (U.S. 2009).  When

considering a motion to stay pending PTO review, courts in this district apply a three-factor test:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the

nonmoving party; (2) whether a stay would simplify the issues for trial; and (3) the stage of the

litigation.  *Cynosure, Inc. v. Cooltouch Inc.*, 2009 WL 2462565, at *2 (D. Mass. Aug. 10, 2009);

*see also Trustees of Boston Univ. v. Everlight Elec. Ltd.*, 12-11935-FDS, 12-12326-FDS, 12-

12330-FDS, 2013 U.S. Dist. LEXIS 96916, at *4 (D. Mass. July 11, 2013).  Each of these factors

supports denial of Gillette's motion.

### A.    A Stay Would Unduly Prejudice and Present a Clear Tactical Disadvantage to Zond

Staying the case now—based on nothing more than speculation on what the PTO might

do—is unduly prejudicial to Zond.  Moreover, the mere fact that Gillette and Intel have taken a

shotgun approach to their IPR strategy—having filed 27 requests for IPR based largely on prior

art already considered by the PTO (with apparently more to come)—suggests that their

motivation is purely tactical.  Indeed, Intel's IPR campaign alone consists of the largest number

of IPR petitions filed in response to a single litigation to date.  Courts have looked to four sub-

factors to assess the question of undue prejudice and clear tactical disadvantage: "(1) the timing

of the review request; (2) the timing of the request for stay; (3) the status of the review

proceedings; and (4) the relationship of the parties." *Davol, Inc. v. Atrium Med. Corp.*, 12–cv–0958, 2013 WL 3013343, at *2 (D. Del. June 17, 2013).  All four favor denial of a stay.

### 1.      Gillette and Intel Waited Too Long to File its Petitions for IPR

Gillette and Intel could have filed their requests for IPR much earlier, but strategically chose not to.  Instead, Gillette waited over seven months into this litigation to file its first petition for IPR.  Courts have denied motions to stay pending IPR when the defendant waited over seven months to first file a petition for IPR.  *See, e.g.*, *Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*, 12-cv-730, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013).

Additionally, Gillette is relying on Intel to proceed on IPRs for a majority of the patents-in-suit.  Intel's reliability when it comes to IPRs has been questionable at best.  Despite using dedicated IPR counsel for its petitions, Intel has inexplicably delayed filing all of its promised petitions.  *Compare, e.g.*, Kesack Decl. Ex. 13 (Excerpt of IPR Petition No. IPR2014-00443) *with* Kesack Decl. Ex. 1 (List of Intel Counsel of Record in the Litigation).  As of the filing of this brief, it has been almost two and a half months since Intel filed its first petition for IPR, yet it has not completed filing IPRs on all patents-in-suit.  *Zond v. Intel*, D. Mass., 1:13-cv-11570-RGS, D.I. 126 (D. Mass. May 2, 2014).  Thus, with each passing day, this factor weighs even more heavily against granting a stay.

### 2.      Gillette's Motion to Stay Is Both Premature and Tardy

Gillette's motion—which was brought over eight months into this case, just as the parties are about to enter claim construction proceedings, but before the PTO has taken any action on any IPR petition—seeks a stay in the precise circumstances where the law is clear that stay is inappropriate.

A stay is inappropriate because Gillette's motion is premature.  None of the asserted patents is subject to IPR yet.  With respect to the petitioned patents, Intel and Gillette filed the

Petitions between February 20 and May 2.  The PTO has taken no substantive action on any of the Petitions, and it may not do so for possibly up to six months or longer.  *See supra* Section II. As to the '652 patent, although Intel promised to file one or more petitions against it "promptly," as of the filing of this brief, neither Intel nor Gillette has filed any IPR petition on that patent. Thus, with regard to the '652 patent, Gillette's stay motion is based merely on Intel's intentions to file one or more IPR petitions at some point in the future.  Ultimately, months from now, the PTO may decide to deny the Petitions entirely, a result that would have no simplifying benefits for the Court and would lead to nothing but delay.  And, given that Intel and Gillette's alleged inchoate IPR petitions on the '652 patent have not been filed to date, further delay can be anticipated.

While Gillette would have the Court disregard the fact that the PTO has taken no action with regard to its IPR petitions, it would betray common sense—and the great weight of the authority—to think that the prematurity of Gillette's motion does not weigh against a stay prior to institution of *any* IPR.[2]  Indeed, in this District, Judge Young has weighed in most recently,

---

[2] *See e.g., Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, 6:12-CV-1727-ORL-37, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013) ("[I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for inter partes review was filed in the USPTO"); *Clouding IP LLC v. SAP AG, et al.*, 1-13-cv-01456, Oral Order, D.I. 35 (D. Del. Jan. 21, 2014) (Kesack Decl. Ex. 2); *Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*, 12-cv-2730, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013) ("Gatekeeper argues, their motion to stay should be granted on the assumption that the PTO will review the case. This argument is too speculative."); *Davol, Inc. v. Atrium Med. Corp.*, 12-cv-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013); *Derma Sciences, Inc. v. Manukamed Ltd.*, 12-cv-3388, 2013 WL 6096459 (D.N.J. July 18, 2013); *Endotach LLC v. Cook Med. Inc.*, 13-cv-01135, 2014 WL 852831, at *5 (S.D. Ind. Mar. 5, 2014) ("Further, there is no guarantee that the USPTO will grant Medtronic's petition for IPR, which adds to the uncertainty of how much the IPR proceedings would simply the issues in this case."); *Kowalski v. Anova Food, LLC*, 11-cv-00795, 2013 WL 6086029, at *3 (D. Haw. June 14, 2013) ("The Court is unable to determine whether the IPR will simplify the issues in this case because the USPTO has not yet decided whether to grant review."); *Lennon Image Technologies, LLC v. Lumondi Inc.*, 2-13-cv-00238, D.I. 24 at 3-4 (E.D. Tex. Jan. 1, 2014) (Kesack Decl. Ex. 3) ("At this early and uncertain stage of

denying motions by TSMC and Fujitsu as premature in another case brought by Zond.  *See Zond,*

*LLC v. Fujitsu Ltd., et al.*, Case No. 13-cv-11634-WGY, D.I. 102 (D. Mass. May 9, 2014)

("After hearing from counsel and after a proposal from the court, the Court enters an Order

---

the inter partes proceeding, it remains to be seen whether the USPTO will grant the requested review . . . . Therefore, based on the tenuous facts as they currently exist, a stay would be premature and unlikely to simplify the issues for trial."); *Lippert Components Manufacturing Inc v. Al-Ko Kober LLC*, 13-cv-00697, D.I. 36 at 6 (N.D. Ind. Jan. 16, 2014) (Kesack Decl. Ex. 4 ) ("Until the USPTO decides whether to re-examine the validity of the patents-in-suit, the Court presumes that the patents are valid and proper in deference to the USPTO's original decision awarding the patents. Presuming that the patents are valid, there is no reason to delay this litigation with a stay."); *MGT Gaming, Inc. v. WMS Gaming, Inc. et al*, 13-cv-00691, D.I. 18 at 3 (S.D. Miss. Dec. 13, 2013) (Kesack Decl. Ex. 5) ("The case should not be further delayed on the chance that the IPR proceeding might take place."); *Nat'l Oilwell Varco, L.P. v. Pason Sys. USA Corp.*, 12-cv-1113, 2013 WL 6097578, at *1 (W.D. Tex. June 20, 2013) ("[A]nother reason for the Court's decision in *Omron* is equally present here: the Patent Trial and Appeal Board (PTAB) has not actually granted *inter partes* review of the subject patent yet, and probably will not do so for several more months."); *Otto Bock HealthCare LP v. Ossur Hf et al*, 13-cv-00891, D.I. 110 at 3 (C.D. Cal. Dec. 16, 2013) (Kesack Decl. Ex. 6) ("The Court thus agrees with other courts that have held that the stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for inter partes review was filed in the Patent Office.") (internal citations and quotations omitted); *Procter & Gamble Co. v. Team Technologies, Inc.*, 12-CV-552, 2013 WL 4830950, at *3 (S.D. Ohio Sept. 10, 2013) ("Defendants' motion to stay is premature. Defendants filed their requests for IPR a month ago. . ."); *Rensselaer Polytechnic Inst. v. Apple Inc.*,13-cv-0633, 2014 WL 201965, at *9 (N.D.N.Y. Jan. 15, 2014) ("Apple has failed to carry its burden of establishing that a stay should be granted at this juncture, prior to a decision by the PTO on whether to accept the matter for IPR."); *RR Donnelley & Sons Co. v. Xerox Corp.*, 12-cv-6198, 2013 WL 6645472, at *3 (N.D. Ill. Dec. 16, 2013) ("Furthermore, the Court finds Xerox's assumption that the PTO will grant its petitions based solely on statistics too speculative."); *TPK Touch Solutions, Inc v. Wintek Electro-Optics Corp.*, 13-cv-02218, 2013 WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013) ("The Court also finds, however, that in most cases, the filing of an IPR request by itself does not simplify the issues in question and trial of the case."); *TruePosition, Inc., v. Polaris Wireless, Inc.*, 12-cv-646, 2013 WL 5701529, at *5 (D. Del. Oct. 21, 2013) *report and recommendation adopted*, 12-cv-646, 2013 WL 6020798 (D. Del. Nov. 12, 2013) ("To date, the IPR petition has not been granted, rendering any consideration of the likelihood of invalidation to be unknown. Thus, the procedural status at this time disfavors the grant of a stay."); *Ultratec, Inc. v. Sorenson Communications, Inc.*, 13-cv-346, 2013 WL 6044407, at *3 (W.D. Wis. Nov. 14, 2013) ("Similarly, the fact that the Patent Office has not yet granted the petitions to review the nine patents adds an additional layer of doubt whether the *inter partes* review will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court."); *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1032-33 (C.D. Cal. 2013*); U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 12-cv-366, 2013 WL 6050744 (M.D. Fla. Nov. 15, 2013).

denying without prejudice [83] Motion to Stay as premature; denying without prejudice [86] Motion to Stay as premature."). Like Gillette, both TSMC and Fujitsu relied on Intel's IPR petitions. Judge Young's decision was well in line with past practice of the District to deny a motion for stay pending IPR before any decision by the PTO to institute. *See Trustees of Boston Univ.,* 2013 U.S. Dist. LEXIS 96916, at *4-5 ("Here, however, it is not yet even established that a re-examination of the '738 patent will be undertaken by the PTO. Therefore, it would be premature for the Court to analyze this potential reexamination as cause for a stay under the factors set forth above"); *Bose Corp. v. SDI Techs., Inc.*, 13-cv-10277, D.I. No. 35; *Bose Corp. v. SDI Techs., Inc.*, 13-cv-10277, D.I. No. 29 at 1. The one exception is Judge Stearns' recent decision in the *Intel* and *Hynix* cases. However, the facts in this case are substantially different than those in *Intel* and *Hynix*. As discussed in more detail below, this case is farther along in discovery than the *Intel* or *Hynix* cases. The parties have exchanged substantial volume of documents. Indeed, on May 15, 2014, Zond substantially completed the production of requested documents in the case. Also, depositions have started in the case. In fact, discovery is so far along that Zond has been able, based on discovery obtained from Gillette and specific representations made by Gillette, to stipulate to dismissal of its claims with respect to Gillette's commercial blades. *See* D.I. 125. Gillette also cites no case to support that a court should grant a stay based on a third party's intention to later file an IPR petition, as Gillette proposes to do for the '652 patent.[3]

A stay is also inappropriate because Gillette's motion is tardy. In its motion, Gillette asserts that this case "is still in the early stages." Mot. at 13. Not so. This case has been

---

[3] It is unclear whether Judge Stearns appreciated that not all patents were subject to an IPR petition in the Intel case. The terse docket entry suggests that Judge Stearns assumed that Intel filed IPRs for all patents in suit: "The seven patents-in-suit are subject to a number of petitions for inter partes review (IPR) at the PTO." 13-11570-RGS (D. Mass.) (D.I. 120).

pending for over ten months. Zond served its initial disclosures on October 21, 2013 and Gillette

served its initial disclosures on November 4, 2013. The parties have each served ten

interrogatories on the other and each party has responded. On December 11, 2013, Gillette

served 116 requests for production of documents on Zond and on February 4, 2014, Zond served

124 requests for production of documents on Gillette. To date Zond has produced 78,509 pages

and Gillette has produced about 1800 pages. Indeed, on May 15, 2014, Zond substantially

completed the production of requested documents in this case. Zond served its infringement

contentions on January 13, 2014, and Intel served its invalidity contentions on March 18-19,

2014. A deposition of a Gillette witness, Dr. Sonnenberg, took place on April 2, 2014. The

depositions of at least two other Gillette witnesses have been noticed. On May 9, 2014 the

parties exchanged proposed claim terms for construction, and have set up a meet and confer

retarding that exchange on May 19, 2014.

Courts have refused to grant stays in other cases at similar junctures. *See, e.g.,*

*TruePosition, Inc.,* 2013 WL 5701529 (motion filed 13 months after filing of the lawsuit, before

any depositions, claim construction, expert discovery and the conclusion of fact discovery);

*Ultratec, Inc.*, 2013 WL 6044407 (motion filed four months after filing of lawsuit, after some

written interrogatory and document exchanges, but before the bulk of discovery had occurred).

### 3.     The PTO Has Not Instituted a Single IPR

Gillette wants this Court to ignore the fact that there is no IPR proceeding pending. As

explained above, Gillette has filed six IPR petitions, but no substantive action has been taken on

them and none is expected for several months. Similarly, Intel has filed 21 IPR petitions, but no

substantive action has been taken on them and none is expected for several months. Moreover,

with respect to the '652 patent, Intel and Gillette have not yet even filed any petitions. Thus,

there is no IPR proceeding to even speak of at this time. Instead, Gillette would have this Court

speculate that the PTO may initiate one or more IPR proceedings sometime this fall, and stay this case on that basis.  This Court should follow the case law of this District and the cases cited in note 2, *supra*, and decline Gillette's invitation to speculate.  *See e.g. Trustees of Boston Univ.*, 2013 U.S. Dist. LEXIS 96916, at *4-5 ("Here, however, it is not yet even established that a re-examination of the '738 patent will be undertaken by the PTO.  Therefore, it would be premature for the Court to analyze this potential reexamination as cause for a stay under the factors set forth above"); *Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*, Case No. 12-cv-2730, 2013 WL 4483355, at *2 ("Gatekeeper argues, their motion to stay should be granted on the assumption that the PTO will review the case.  This argument is too speculative."); *RR Donnelley & Sons Co.*, 2013 WL 6645472, at *6 ("Furthermore, the Court finds Xerox's assumption that the PTO will grant its petitions based solely on statistics too speculative."); *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *8 ("In summary, I find that whether any issues attendant to this litigation may simplified through the IPR process is speculative primarily in light of the fact the PTO has yet to accept or deny Apple's petitions for further review.").  Since there is no IPR proceeding pending, this factor strongly weighs against granting a stay.

### 4.     Zond Will Suffer Prejudice if the Case Is Stayed

Zond will be prejudiced by a stay even though it does not directly compete with Gillette.  As Gillette acknowledges, the IPR proceeding could take as long as twenty-four months from filing—*i.e.*, into 2016.  Mot. at 7.  That estimate, however, does not include any potential appeal to the Federal Circuit, which could potentially suspend this case until 2017 or longer.  Moreover, Gillette does not take into account that, if instituted, the 27-plus IPR proceedings are likely to be joined in some form or fashion under the IPR joinder provisions, in addition to the joinder requests Gillette may be seeking.  Given the overlap of patents and prior art, the PTO is likely to extend its time for concluding the IPR proceeding beyond the eighteen-month time limit for good

cause.  *See* 37 C.F.R. § 42.100(c) ("An inter partes review proceeding shall be administered such that pendency before the Board after institution is normally no more than one year.  The time can be . . . ***adjusted by the Board in the case of joinder.***) (emphasis added).  Thus, Gillette's argument that these IPRs will be a "faster, less costly alternative[] to litigation," *see* Mot. at 7, is inapplicable in this case, where Intel opted to file a record number of petitions in the same litigation, Gillette filed more petitions that may also be joined with Intel's filings, and TSMC has promised to file even more petitions that it will request to have joined to Intel's filings. Consequently, the stay requested by Gillette could last several years, and Zond would be prejudiced because witnesses may become unavailable, their memories may fade, and evidence may be lost during the period of the stay.  *See Eon Corp. IP Holdings, LLC v. Skytel Corp.*, 08-cv-385, 2009 WL 8590963, at *2-3 (E.D. Tex. Apr. 29, 2009).

████████████████████████████████████

████████████████████████████████

In addition, Zond may still be entitled to a permanent injunction, even though it does not compete with Defendants. *See Ebay Inc. v. MercExchange*, LLC, 547 U.S. 388, 393 (2006) (declining to adopt a categorical rule regarding entitlement to injunctive relief); *see also Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 607-08 (E.D. Tex. 2007), *rev'd on other grounds*, 542 F.3d 1363 (Fed. Cir. 2008) (granting permanent injunction to a non-competing patent owner). Thus, even though Zond will be able to collect damages for infringement occurring during the stay, it may still suffer from irreparable harm during that time. *See Eon Corp. IP Holdings, LLC v. Skytel Corp.*, 2009 WL 8590963, at *3.

**B.**   **There Is No Evidence that a Stay of this Case Would Simplify Issues for Trial and Certainly Not for this Court**

A stay is unlikely to simplify the issues for the parties or this Court. As the movant, Gillette bears the burden of proof on this issue, *Ultratec, Inc.*, 2013 WL 6044407, at *2, but Gillette has not carried its burden. Gillette's main argument about simplification relies on IPR institution and claim cancellation statistics for final written decisions. However, Gillette neglects to mention that, as of May 8, 2014, 137 IPRs have settled while only 47 made it to a final written decision. That means that as of today it is almost three times as likely for an IPR matter to ***settle*** as it is to come to a final written decision. This is especially damaging to Gillette's motion in particular because it relies on Intel to carry out IPRs on 7 of the 10 patents-in-suit—IPRs over which Gillette has no control. The high likelihood of Intel's IPRs settling before a written decision on seven of the patents-in-suit suggests that those IPRs are unlikely to simplify any issue in this case with respect to those patents. If Intel and Zond settle their dispute and the IPRs are withdrawn, the IPRs will have had zero simplification effect on this case.

Furthermore, the IPRs would not simplify any issues in this case because they lack merit. The statistics that Gillette cites do not speak to the merits (or lack thereof) of Gillette's or Intel's IPR petitions.  Indeed, a number of courts have recognized that Gillette's argument—that the Court can use past PTO statistics to predict the outcomes in any particular case—as "too speculative" to be given any weight.  *See Dane Technologies, Inc.,* 2013 WL 4483355, at *2 ("Gatekeeper argues, their motion to stay should be granted on the assumption that the PTO will review the case. This argument is too speculative."); *RR Donnelley & Sons Co.*, 2013 WL 6645472, at *6 (N.D. Ill. Dec. 16, 2013) ("Furthermore, the Court finds Xerox's assumption that the PTO will grant its petitions based solely on statistics too speculative."); *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *8 ("In summary, I find that whether any issues attendant to this litigation may simplified through the IPR process is speculative primarily in light of the fact the PTO has yet to accept or deny Apple's petitions for further review.").  The PTO has not instituted any IPR, thus there is no evidence that there will be any simplification.

What is probative of the merit are the grounds on which Gillette and Intel are proceeding. In its six petitions, Gillette has requested that the PTO institute 31 separate grounds of unpatentability.  *See* Kesack Decl. Exs. 7-12 (Gillette IPR Grounds).  Every one of these grounds relies on one or more prior art references that were before the Patent Office during prosecution. For example, in its IPR2014-00495 and IPR2014-00397 petitions against the '155 patent, Gillette lists as its "primary prior art references" three prior art references: *Wang*, *Kouznetsov*, and *Mozgrin*.[4]  Every one of these prior art references is cited prior art in the '155 patent.  In fact, Wang is marked with an asterisk, indicating that the examiner himself chose to cite Wang, and

---

[4] D.V. Mozgrin, et al, *High-Current Low-Pressure Quasi-Stationary Discharge in a Magnetic Field: Experimental Research*, Plasma Physics Reports, Vol. 21, No. 5, pp. 400-409, 1995 ("Mozgrin"); U.S. Patent No. 6,413,382 ("Wang"); and Kouznetsov, U.S. Patent Publication 2005/0092596, filed June 14 ("Kouznetsov").

still found patentability of the '155 patent.

Intel's IPR petitions follow the same pattern. In its 19 petitions relevant to claims asserted in this case, Intel has requested that the PTO institute 88 separate grounds of unpatentability. *See* Kesack Decl. Exs. 13-33 (Intel IPR Grounds).  However, 85 of Intel's 88 grounds rely upon prior art references that were already of record before the PTO during the prosecution of Zond's patents.[5] *Compare* Kesack Decl. Exs. 13-33 (Intel IPR Grounds) *with* Kesack Decl. Exs. 34-42 (Lists of Intel Cited Prior Art).  That is, Intel argues that the PTO should find Zond's claims unpatentable in view of prior art **that the PTO has already considered**.  As a result, Gillette's and Intel's burden before the PTO—to show a reasonable likelihood of prevailing on these grounds— will be much more difficult to meet than in a typical IPR.

Further, only one of Gillette's 31 requested grounds is an "anticipation" ground—*i.e.*, a ground based on the argument that Zond was not the first to invent the claimed subject matter. As discussed above, this single anticipation ground is that the '155 patent is anticipated by *Kouznetsov*, an argument that was already examined and denied by the Patent Office during prosecution.  Similarly, only five of Intel's 88 requested grounds are "anticipation" grounds. The remaining 30 Gillette grounds and 83 Intel grounds are mere "obviousness" grounds—*i.e.*, grounds based on the argument that acknowledge that Zond was the first to invent the claimed subject matter, but that that subject matter was merely obvious over prior work.  To succeed on an obviousness ground, Gillette and Intel must not only show that the various elements of the

---

[5] Namely, D.V. Mozgrin, et al, *High-Current Low-Pressure Quasi-Stationary Discharge in a Magnetic Field: Experimental Research*, Plasma Physics Reports, Vol. 21, No. 5, pp. 400-409, 1995 ("Mozgrin"); U.S. Patent No. 6,413,382 ("Wang"); A.A. Kudryavtsev, *Ionization relaxation in a plasma produced by a pulsed inert-gas discharge*, Sov. Phys. Tech. Phys. 28(1), pp. 30-35, January 1983 ("Kudryavtsev") (cited as prior art during the prosecution of Zond's '142 patent).

claims can be found spread among several prior art references, but that there exists some reason to combine those references to arrive at the claimed invention. *Ambit Corp. v. Delta Airlines, Inc.*, 707 F. Supp. 2d 74, 79 (D. Mass. 2010). Moreover, both Gillette and Intel must overcome any "secondary considerations of non-obviousness" raised by Zond, *e.g.*, that Intel's supplier of the magnetron sputtering equipment, Applied Materials, Inc., did not find Zond's inventions obvious, but rather was engaged in collaborative projects with Zond in connection with the patented technology. *Avidyne Corp. v. L-3 Commc'ns Avionics Sys., Inc.,* 05-cv-11098, 2012 WL 1067645, at *3 (D. Mass. Mar. 29, 2012). As a result, the obviousness inquiry is significantly more complicated than the anticipation inquiry, is more susceptible to attack, and is therefore, less likely to succeed.

Gillette also argues that the case should be stayed because, even if the PTO institutes some of the Petitions, but not a single claim is canceled, the Court can still benefit from the PTO's views on claim construction. But, of course, that is true whether the case is stayed or not. To the extent that any of the IPR proceedings shed light on claim construction, "the court may take them into account even after a claim construction ruling because it retains the power to modify its claim constructions in an infringement action up until the time a jury renders its verdict." *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *9 (citing *Pfizer, Inc. v. Teva Pharm., USA, Inc.,* 429 F.3d 1364, 1377 (Fed.Cir.2005)); *see also Visteon Global Techs., Inc. vs. Garmin Int'l, Inc.*, 10-cv-10578, 2013 WL 434135, at *2 (E.D. Mich. Feb. 4, 2013) ("[T]he Court will be able to resolve the summary judgment issues relating to [the patents in re-examination], incorporating any final claim decisions that might issue from the USPTO in the process, along with the three other remaining patents in suit, and to see the case through a speedy adjudication on the merits, if triable issues remain.").

Finally, Gillette argues that should claims survive any instituted IPR, they will agree to estoppel—preventing them from arguing to this Court that that claim is invalid on any ground that Intel raised during the IPR.  However, the practice in this District is to require defendants to agree to drop their ***entire invalidity case*** in order for a stay to be granted based on their own IPRs, much less somebody else's.  *See Bose Corp. v. SDI Techs., Inc.*, 13-cv-10277-WGY, D.I. No. 108 at p. 4:19-5:1 (D. Mass. Jan 20, 2014) ("The Court: ***If I'm going to stay anything you're going to waive that.  So that's another thing.  So validity's off the table if I stay things***.") (emphasis added).  Judge Young confirmed this practice during a hearing over motions to stay another Zond case filed by Fujitsu and TSMC, where the motion was denied a premature. *See Zond, LLC v. Fujitsu Ltd., et al.*, Case No. 13-cv-11634-WGY, D.I. 102. Gillette's agreement to be bound by an estoppel does not meet the required practice in this District.  This is because the estoppel Gillette proposes is limited to invalidity arguments based on anticipation and obviousness, and only based on prior art patents or printed publications.  35 U.S.C. § 311(b). Thus, "barring a cancellation of all of the claims challenged . . . the [PTO's] IPR decision will serve to enlighten the parties and the court on a limited number of matters, and estoppel will attach only to the claims [Gillette or Intel] asserted or could have reasonably asserted before the PTO." *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *7.  Gillette's unwillingness to be bound by a complete estoppel of its invalidity claims and defenses in this litigation, as required by this District, alone is sufficient grounds for denial of this motion.

### C.      The Litigation Is No Longer in Its Early Stages and Should Not Be Stayed

As demonstrated in Section II, *supra*, this case has moved far beyond its early stages, such that staying the case at this juncture is no longer appropriate, especially when considering that not one of the Petitions have been instituted.  A Gillette witness has already been deposed, interrogatories have been served and answered, and documents have been produced by both

parties.  In fact, with respect to Gillette's commercial products, fact discovery is complete and the parties have already resolved their dispute with respect to said products.  *See* D.I. 78. Moreover, the parties have already begun the claim construction process, as the parties exchanged proposed claim terms on May 9, 2014, and opening claim construction briefs are to be exchanged in just over a month.  *See* D.I. 23.  Gillette's characterization of this case as "in its early stages" both procedurally and substantively is off the mark.  *See* D.I. 84 at 8.  Substantial resources have already been expended by the parties to this litigation and a stay at this juncture would render many of those efforts meaningless.

IV.     **CONCLUSION**

        Gillette's Motion is premature because the PTO has not yet instituted a single IPR and its Motion is tardy at the same time because both Gillette and Intel waited until ten months into this case – and two and a half months after Intel's initial IPR petition – to request a stay.  Moreover, Gillette's IPR strategy will not simplify the issues in this case and does not present narrow issues of invalidity to the PTO for expeditious consideration.  Instead, for purely tactical reasons, Intel filed the largest number of IPR petitions in a single litigation to date (and promises to continue filing more), and Gillette has filed 6 of its own IPRs to accompany Intel's.  If actually instituted, Intel's and Gillette's IPRs are likely to take years to work through the PTO and the Federal Circuit, while Gillette's infringement continues unabated, memories fade, and evidence disappears all to the detriment of Zond.  Thus, the Court should deny Gillette's Motion to Stay.


Dated: May 16, 2014                    Respectfully submitted,

                                        */s/ Daniel Kesack*

                                       David S. Godkin (BBO#196530)
                                       Andrew A. Caffrey III (BBO#660481)
                                       BIRNBAUM & GODKIN, LLP
                                       280 Summer Street

Boston, MA 02210
617-307-6100
godkin@birnbaumgodkin.com
caffrey@birnbaumgodkin.com

David C. Radulescu
Tigran Vardanian
Etai Lahav
Gregory S. Maskel
Daniel Kesack
RADULESCU LLP
136 Madison Avenue, 6th Floor
New York, NY 10016
 (646) 502-5950
david@radulescullp.com
tigran@radulescullp.com
etai@radulescullp.com
greg@radulescullp.com
daniel@radulescullp.com

*Counsel for Plaintiff Zond, Inc.*

## CERTIFICATE OF SERVICE

I, Gregory S. Maskel, hereby certify that a true and accurate copy of this document was served via ECF to all registered participants as identified on the notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on May 16, 2014.

/s/ *Daniel Kesack*
Daniel Kesack

18